Filed 7/14/14  David v. Hermann CA1/1
Received for posting 8/5/14

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SUSAN DAVID, et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>WENDY ALTER HERMANN,<br><br>     Defendant and Respondent. | A131825<br><br>(Marin County<br>Super. Ct. No. PR000851)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 19, 2014, be modified as follows:

1.  On page 2, footnote 1 is modified to read:
    We reversed the judgment only as to the attorney fees awards and the postjudgment order relating to enforcement of the judgment for attorney fees. (*David v. Hermann*, *supra*, 129 Cal.App.4th at pp. 690-691.)

2.  On page 21, footnote 13 is modified to read:
    Given that both the 25 percent interest in the Partnership and in the Brannan Street real property are assets of the constructive trust, one might wonder why the parties care whether the 25 percent interest in the real estate is an asset of the Partnership or not.  We note, however, that if the 25 percent interest in the Brannan Street real property is not owned by the Partnership, then the owner(s) of that 25 percent interest theoretically could seek to partition the realty. (Code Civ. Proc. § 872.210, subd. (a)(1).)  We express no opinion, however, regarding whether anyone has a right to partition the Brannan Street realty.

There is no change in the judgment.

Appellant's and respondent's petitions for rehearing are denied.


Dated:_____          _____

                                                  Margulies, Acting P.J.

Filed 6/19/14 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SUSAN DAVID et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>WENDY ALTER HERMANN,<br><br>      Defendant and Appellant. | A131825<br><br>(Marin County<br>Super. Ct. No. PR000851) |

**INTRODUCTION**

This is the third appeal arising out of a dispute between sisters Susan David (David) and Wendy Alter Hermann (Hermann) regarding their mother's living trust. In the first appeal, we affirmed the trial court's judgment invalidating the trust because of Herman's misrepresentation and fraud, and imposing a constructive trust. In the second appeal, we reversed the trial court's 2007 orders regarding Hermann's accounting of the property held as constructive trustee, with directions to the trial court to prepare a statement of decision. The trial court did so, and Hermann has appealed, claiming the court had no authority to enter a judgment differing from a 2006 order regarding the accounting. Hermann specifically contends the trial court erred in denying her claim for approximately $51,000 she asserts she deposited in the trust account, in assessing prejudgment interest on the surcharge against her as trustee of the constructive trust, and in ruling a 25 percent interest in real property located on Brannan Street (Brannan Street property) is owned by the 300 Company partnership (Partnership). We conclude no substantial evidence supports the ruling as to the ownership of the Brannan Street

1

property, but otherwise affirm the judgment. We therefore do not reach David's "protective" cross-appeal seeking relief only in the event "this matter [is] remanded to the Trial Court for revision of the Judgment in a manner that would make it more beneficial to Hermann." At oral argument, David elaborated her concern was a decision that "makes the surcharge and interest more favorable to Ms. Hermann." Because our decision does not do so, we dismiss David's "protective" cross-appeal.

## BACKGROUND

The underlying lawsuit in this long-running dispute was brought by David, who sought "an order adjudicating the Jane Alter Living Trust and the Second Amendment to the trust to be invalid on the ground of Jane's incapacity or [Hermann's] undue influence over Jane." (*David v. Hermann* (2005) 129 Cal.App.4th 672, 679.) The court found the allegation of undue influence had been proven, and "proceeded to also find that the depository provisions were caused by misrepresentations of [Hermann] that were intended to alienate Jane [Alter] from her oldest daughter [David]. The decision declared the Jane Alter Living Trust and the Second Amendment to the trust to be void . . . ." (*Id.* at pp. 679–680.) We affirmed that portion of the judgment.[1] (*Id.* at p. 690.)

We set forth the subsequent background of this case in our 2009 opinion in case No. A119365, and thus quote from that opinion:[2]

"David's November 2005 Probate Code section 850 petition sought an accounting from Hermann for her administration of the Jane Alter trust from June 8, 1993 through October 31, 2005. The petition as amended sought to recover Hermann's interests, obtained with trust assets, in a residence in Petaluma, and an office building at 300 Brannan Street in San Francisco. In October 2005, Hermann filed a petition to probate Jane Alter's 1991 will in San Francisco Superior Court; David filed a will contest in that

---

[1] We reversed the judgment only as to an attorney fees award. (*David v. Hermann, supra*, 129 Cal.App.4th at pp. 690–691.)

[2] On our own motion, we take judicial notice of our opinion in case No. A119365. (See Evid. Code, § 451, subd. (a).) We previously granted the parties' joint request to take judicial notice of appellant's and respondent's appendices in that case.

2

matter. In opposition to Hermann's unsuccessful attempt to have the case at bench coordinated with the San Francisco probate proceeding, David argued that there was 'no factual or legal basis for transferring administration of the post-judgment accounting to the San Francisco Probate Court. There is no danger of inconsistent rulings or of a multiplicity of actions concerning the accounting that is now months overdue. Indeed, forcing the preparation of the court-ordered accounting in Marin could only serve to expedite the San Francisco probate proceeding. If the San Francisco Superior Court determines that the 1991 will governs the distribution of Jane Alter's probate estate, the exact nature and extent of that probate estate will have already been determined by virtue of the accounting.

"The court granted the petition for an accounting, and ordered briefing on the other issues raised in the petition. In her opening brief on those issues, Hermann argued that the assets she held as constructive trustee 'are decedent Jane Alter's' assets, and that she should be instructed to transfer those assets to Debra Dolch, the special administrator of the estate of Jane Alter in San Francisco Probate Court. David opposed that approach, noting that an order in the San Francisco probate case had stated that ownership interests in the Petaluma property were issues pending in the case at bench.

"By stipulation of the parties, Dolch was appointed receiver of the Petaluma and Brannan Street properties; Hermann quitclaimed title to the Petaluma property, and a 25 percent interest in the Brannan Street property, to Dolch as receiver.

"Hermann filed an accounting, petitioned to have the accounting approved, and requested that the case be transferred to the San Francisco Probate Court 'so that the assets may be distributed according to Jane Alter's testamentary disposition subject to probate.' David objected to the accounting, calling it inadequate and incomplete. David retained Charlene Haught Johnson, a probate attorney, to review the accounting; Johnson concluded that Hermann owed the constructive trust $1,889,870. Johnson opined that the constructive trust assets included this $1,889,870 'receivable' from Hermann, equity in the Petaluma property, and a 25 percent interest in the 300 Company partnership, which collected income from the Brannan Street property. Johnson's report stated that

3

Hermann was entitled to 50 percent of the trust assets; David or David's children were entitled to the other 50 percent. Johnson opined that Hermann's share of the trust assets 'should first be satisfied out of her receivable[].'

"In November 2006, the court rendered its decision on the accounting and determined that Hermann would be surcharged for: attorney fees of '$93,378 plus margin fees in the sum of $16,223 paid on loans Ms. Hermann borrowed for attorneys' fees to defend herself against the charges of undue influence and fraud'; $24,000 of the $65,000 in trustee fees claimed; $1,120,712.67 in distributions from trust assets; and $69,349.86 from refinancing of the Petaluma property. The court found that Hermann owed interest at the rate of 10 percent per annum from the dates of the disapproved payments or disbursements. The court wrote: 'All other requests for settlement and approval are granted and all other objections by the parties are denied.'

"The parties disagreed on the amount of Hermann's liability under the November 2006 decision. David argued that Hermann owed the trust $2,029,328.75 as of October 4, 2006; Hermann argued that, as of that date, she owed the trust $1,296,228. In a December 2006 brief, David continued to oppose transferring the case to San Francisco Probate Court for a distribution of assets. David submitted that, '[i]n view of the dispute over whether the constructive trust assets are assets of Jane Alter's probate estate,' it would be 'premature' for the court to make such an order.

"The matter was set for a further hearing on January 17, 2007. The judge hearing the case retired on January 5, 2007, and another judge thereafter presided. David filed a proposed judgment imposing a $2,029,328.75 surcharge on Hermann as of October 4, 2006, increasing by $362.64 per day thereafter (referred to in the proposed judgment as the 'Hermann Receivable'), and authorizing Dolch to obtain an appraisal of the constructive trust's '25% interest in the 300 Brannan real estate and partnership,' part of the constructive trust 'Estate.' The proposed judgment provided:

"The parties all appear to agree that Hermann is probably entitled to 50% of the value of the Estate. If Hermann is determined by this Court or by the San Francisco Superior Court to be entitled to 50% of the Estate, and if said 50% share of the Estate is

4

equal to or greater to the Hermann Receivable, the Hermann Receivable shall be applied to Hermann's 50% share of the Estate and Hermann shall receive the balance . . . . If the value of Hermann's share of the Value of the Estate is less than the value of the Hermann Receivable on the date of distribution to Hermann, Hermann will owe the balance to the persons entitled to receive the remaining balance of the Value of the Estate. . . . To the extent that Hermann's interest in the constructive trust does not fully reimburse the constructive trust, a money judgment against Hermann for any deficiency shall issue for the balance.'

"In an order filed January 19, 2007, the court found 'various anomalies and inconsistencies in the proposals of Ms. Hermann that are difficult to reconcile with the thrust of this court's prior order of November 20, 2006. The court is persuaded that [David's] motion and proposed judgment is more in keeping with the intent and the history of this litigation and that order. Petitioner Susan David's motion for entry of judgment is granted, not as an entry of judgment, but as an interim order.' The order stated that David's proposed judgment 'shall be issued as an order of the court,' with only the title, and the hearing and briefing schedule, modified.

"The contemplated order had not been filed by the time of the next hearing, on March 9, 2007. At the March 9 hearing, Hermann requested a statement of decision with respect to the order, and filed a 'Supplemental Request for Statement of Decision' later that day. Hermann asked among other things that the court 'address how this March 2007 order justifies imposing a surcharge greater than the amount included in Judge Smith's November 20, 2006 order, assuming the Court in this March 9, 2007 order refuses to take into account the credits approved in the November 20, 2006 order.' Hermann stated that the request for statement of decision would be withdrawn if the March 2007 order remained an 'interim,' rather than final, order.

"The court filed an order on March 9, 2007, incorporating the provisions of David's proposed judgment with minor modifications, such as changing the word 'judgment' to 'order,' and the date of the next hearing from April 6, 2007 to May 7, 2007. The order 'adjudged and decreed': '1. Respondent Wendy Hermann ("Hermann")

5

is surcharged the sum of $2,029,328.75, as of October 4, 2006 . . . increased by additional interest at the rate of $362.64 per day. . . . [¶] 2. The constructive trust estate is hereby declared to consist of the following: [¶]. . . [¶] c. The amounts specified in paragraph 1 of this order as constituting surcharges against Hermann, and the accrued interest thereon until Hermann satisfies said amounts . . . .' The court did not issue a statement of decision.

"In her opening brief on the remaining issues, Hermann objected to the court's decision to rule on disposition of the constructive trust's assets, and reiterated her longstanding argument that the court was required to transfer all of those assets to the San Francisco Probate Court with jurisdiction over the estate of Jane Alter. In her opening brief, David dropped her longstanding opposition to that argument, and 'acquiesce[d] to and join[ed] in Hermann's request that this Court determine that the personal representative of the Estate of Jane Alter, to be appointed by the San Francisco Superior Court, should receive the assets of the constructive trust estate that have been determined pursuant to this Court's March 9 Order.'

"David filed an appraisal from attorney Joseph Stemach valuing the constructive trust's 25 percent interest in the 300 Company partnership, 'which includes the 300 Brannan Street real property,' at $1,191,000, based on a 2005 appraisal of the real property. Hermann objected that the Brannan Street real property was not owned by the partnership. Hermann argued that it would be premature and improper for constructive trust assets to be appraised in the case at bench because the value of the assets had to be determined at the time of their distribution in the San Francisco probate case. Dolch submitted an updated appraisal of the Brannan Street real property, which caused Stemach to increase his valuation of the constructive trust's 25 percent partnership interest to $1,401,801.

"At the May 7 hearing, the judge said he thought it would be inappropriate for him to pass on the merits of Stemach's appraisal because his wife had worked with Stemach. Hermann did not consent to have the court rule on the matter, and reiterated her argument that any valuation of trust assets would be premature in any event. The hearing

6

proceeded on the issue of whether the 300 Company partnership owned the Brann[a]n Street real property. David introduced documentary exhibits and served a trial brief aimed at overcoming the presumption that the owner of legal title is the owner of full beneficial title (Evid. Code, § 662 [presumption may be rebutted by clear and convincing proof]). The court granted Hermann's request for further briefing on the issue, directed Hermann to file her brief by May 21, 2007, and directed David to file her reply brief by May 29, 2007. Dolch's counsel asked 'that whatever final order comes from this court . . . have a list of the assets in the constructive trust so that if Ms. Dolch is appointed in the San Francisco court, she knows what those assets are.'

"Minutes for the May 7, 2007 hearing in the court's register of actions state, 'case under submission,' but a May 11, 2007 entry in the register states, 'case no longer under submission.'

"In her posthearing brief, Hermann argued that, given 'David's concession that those assets held by the Receiver should be delivered to the personal representative of the Estate of Jane Alter, this Court should simply order the Receiver to deliver those assets to the Probate Court . . . .'

"David filed a proposed order stating in part: '2. The Court finds that the constructive trust estate consists of the following: [¶] a. A 25% interest in the 300 Company Partnership, which partnership interest includes the 25% interest in the real property located at 300 Brannan Street, San Francisco of which record title is in the name of the Receiver. [¶] b. Hermann's surcharge, as determined by this Court's March 9, 2007 Order, in the amount of $2,029,328.75, as of October 4, 2006. This surcharge shall be increased by additional interest . . . . [¶] c. Hermann is further surcharged the sum of $30,847 for costs of the receivership . . . plus interest . . . . [¶] d. The foregoing surcharges and interest are money judgments against Hermann . . . .' The proposed order concluded: 'Except to the extent the March 9, 2007 Order is inconsistent with the foregoing, the March 9, 2007 Order is hereby incorporated by this reference into this Order, which is a final order of this Court.'

7

"In response to Hermann's objections to the proposed order, David stated that she 'does not contend that the March 9, 2007 Order is final. Such contention would be inconsistent with this Court's order of January 19, 2007 which declared the March 9, 2007 Order would be "interim." The Court clearly reserved jurisdiction to modify that order. David proposes that this Court now confirm those portions of the March 9, 2007 Order that will become part of the final order of this Court. If this Court fails to do so, there can be little doubt that Hermann will urge the San Francisco Probate Court to disregard portions of the March 9, 2007 Order not to her liking and David will be forced to relitigate issues that have already been litigated and relitigated *ad nauseum* in this Court.'

"On May 29, 2007, the last day for filing David's reply brief, Hermann filed a 'Supplemental Request for Statement of Decision.' The May 29, 2007 request renewed the requests for statement of decision made on March 9, 2007, and sought a statement of decision on a number of issues incident to the ownership of the Brann[a]n Street real property, including: 'When was this real property inherited by Zal Alter [the parties' father] and Renee Delman "converted" from ordinary individually owned property to "partnership" property; by whom was the real property contributed; when was it accepted by the "partnership." Who were the "partners" when this alleged conversion took place; who are the "partners" today? Has Renee Delman, the only survivor of the 1966 written [partnership] agreement, been provided proper notice of this allegation that property excluded from her agreement and identified as owned by trusts of which she is a trustee should be characterized as "partnership" property. How does the Court construe paragraph 6 of the 1966 agreement between decedent Zal Alter and his sister Renee Delman which expressly excludes any real property from being "partnership" property.'

"David prepared a proposed statement of decision, which, as Hermann pointed out, did not address any of the foregoing issues.

"The court filed its Order After Postjudgment Hearing on July 20, 2007. As to the subject matter of the May 7 hearing, the court found 'that the 25% interest in the Brannan Street real property, held by receiver Debra Dolch, is included in the 25% interest in the

8

300 Brannan Company Partnership, listed by respondent Hermann in her accounting of constructive trust estate assets. . . . Petitioner David has submitted "clear and convincing evidence" to rebut the presumption set forth in Evidence Code § 662. . . .'

"With respect to the requests for statements of decision, the court wrote: 'Respondent Hermann's March 9, 2007 Request for Statement of Decision is moot by its own terms, because the January 19, 2007 order is an interim order. Respondent Hermann's May 29, 2007 "Supplemental" Request for Statement of Decision is moot insofar as it relates to the March 9, 2007 request. The [May] 29, 2007 "Supplemental" Request is untimely insofar as it relates to the May 7, 2007 hearing, because it was not made "prior to the submission of the matter for decision." CCP § 632.'

"As for the March 9 order, the court did not reiterate the prior rulings at length as David had proposed. Instead, the court wrote simply: 'As per their prior agreement, the parties are direct[ed] to the Probate Court in San Francisco for further evaluation in accordance with the rulings heretofore made, and, in particular, this Court's order of March 9, 2007. The assets of the constructive trust estate are described in the March 9, 2007 [order].' " (*David v. Hermann* (Aug. 3, 2009, A119365) [nonpub. opn.], fn. omitted.)

In August 2009, we reversed the orders of March 9, 2007 and July 20, 2007, without addressing their merits, and directed the trial court to prepare a statement of decision for those orders. (*David v. Hermann, supra*, A119365.)

On January 31, 2011, the trial court issued its amended statement of decision, and notice of entry of judgment pursuant to that amended statement of decision was served and filed on April 12, 2011.

The court found the constructive trust estate included a: "25% interest in the 300 Company Partnership, which includes the 25% interest in the 300 Brannan Street, San Francisco, California real property"; the current balance of the Bank of Marin account listed on Schedule E of Hermann's accounting; and the real property at 1918 Sestri Lane, Petaluma or the proceeds from its sale. The court denied Hermann's claim for $51,565.48, which she alleged was the total of nine payments she made to the trust. The

9

court ordered a $1,370,375.75 surcharge against Hermann with per diem interest at the rate of $245.79 per day. The per diem interest is to begin "after October 4, 2006 . . . [but] shall not accrue during the one year period beginning February 1, 2010 and ending January 31, 2011 but shall continue to accrue after January 31, 2011 until satisfaction of Hermann's obligations for said surcharges and interest." (AA 599) The court also ordered all assets of the constructive trust be delivered to Debra Dolch, in her capacity as administrator of the estate of Jane Alter in the San Francisco probate proceeding, and that the "final distribution of the constructive trust estate shall be determined in the San Francisco Probate Action."

## DISCUSSION

### *The November 20, 2006, Ruling*

Hermann maintains the trial court's November 20, 2006 ruling was "a final appealable order that may not be disregarded." Because David did not appeal from that ruling, Hermann asserts it is "final" and binding, and the trial court had no power to issue the March 2007 and July 2007 orders to the extent they differ from the November 20 ruling. She relies on Probate Code section 1300, which provides in part: "an appeal may be taken from the making of or refusal to make, any of the following orders: [¶] . . . [¶] (b) Settling an account of a fiduciary. [¶] . . . [¶] (f) Fixing, directing, authorizing or allowing payment of compensation or expenses of a fiduciary. [¶] (g) Surcharging, removing, or discharging a fiduciary." (Prob. Code, § 1300.)

To put Hermann's finality assertion in proper context, we recount here the significant procedural events regarding the November 2006 order. Hermann filed her accounting and petition to approve and settle it on August 14, 2006, followed by errata to her accounting on August 21.

On September 13, there was a hearing at which the court noted it had to decide whether the form of the accounting filed by Hermann was legally adequate, and whether a referee should be appointed to review the accounting. The court (the Honorable Vernon F. Smith was presiding in the probate department at that time) gave the parties until October 4 at 4:00 p.m. to file "substantive objections" to the accounting and any

10

other responses, and stated "I will issue a tentative ruling and you can come in and argue."

The court issued a "Decision" on November 20. As we stated in our August 2009 opinion in Hermann's prior appeal, "[t]he parties disagreed on the amount of Hermann's liability under the November 2006 decision" and the "matter was set for a further hearing." (*David v. Hermann, supra*, A119365.) On December 1, Hermann filed a proposed amendment to the Decision, along with a proposed "Final Order." On December 14, David filed objections to Hermann's proposed amendments and also filed her own "Proposed Judgment" and declaration of her counsel in support. Hermann filed a response to David's objections on December 18, and David filed a reply the following day. The day after that, on December 20, Hermann filed objections to David's Proposed Judgment.

On December 27, David filed an ex parte motion for order shortening time for hearing on a motion for entry of judgment and other relief. The declaration in support of the motion indicated "while this Court's 'Decision' of November 20, 2006, resolves many of the issues between the parties, it does not fully adjudicate a number of remaining open issues . . . . [¶] Apparently counsel for Hermann has similar views as both parties have submitted proposed orders to the Court and have made proposals that address various aspects of this Court's 'Decision.' The Court declined to enter any of the proposed orders when the parties were before the Court . . . in connection with the related civil case brought by David against Hermann . . . . [¶] Assuming that this Court's November 20, 2006, 'Decision' is intended to be a final order, the last date for appeal is January 22, 2007."

The court granted the motion for an order shortening time, setting the hearing for January 17, 2007. Judge Smith retired before the hearing took place, and Judge James Ritchie heard the matter. At the hearing, Hermann claimed the November 20 "Decision" was final, and the objections she had filed simply addressed "typographical" issues, "like how much was the margin interest was not added up properly."

11

The trial court, however, found "various anomalies and inconsistencies in the proposals of Ms. Hermann that are difficult to reconcile with the thrust of this court's prior order of November 20, 2006. The court is persuaded that [David's] motion and proposed judgment is more in keeping with the intent and history of this litigation and that order. Petitioner Susan David's motion for entry of judgment is granted, not as an entry of judgment, but as an interim order." The court added to the order that "The other issue before the court is determination of the persons entitled to the constructive trust estate. This issue will be decided after further hearing," which it scheduled for April 9, 2007.

In light of the foregoing, it is apparent the November 20, 2006, ruling was not a final disposition, nor was it treated as such by the court, David and, even, Hermann. Judge Smith stated in September 2006, at the hearing preceding the ruling, that he would issue "a tentative ruling and you can come in and argue." The November 20 "Decision" was just that—a tentative one. Subsequent to its issuance, both parties filed objections and competing proposed "final" orders/judgments. Hermann, herself, requested the ruling be "amended," filing a pleading entitled "Request to Amend Decision to Correct Mathematical Amounts, References to Referee and Statutory Authority, Deny Motion for Contempt and Final Order to Provide an Amount Certain." The finality issue was also argued by the parties at the hearing set pursuant to David's application for an order shortening time—sought because, if the court had issued a final order, the time to appeal would run. The trial court, regardless of the fact a new judge was sitting, was clearly conversant with the procedural history of the case and plainly concluded the November 2006 ruling was not final and set the matter for further proceedings on remaining issues. In its amended statement of decision, the court noted Hermann had submitted a proposed amendment to the November 20 decision, and "found that much was 'left for future consideration' after Judge Smith's November, 2006 ruling in the case."

There is no question the trial court had authority to modify the nonfinal November 2006 ruling. "If a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief." (*Le Francois v.*

12

*Goel* (2005) 35 Cal.4th 1094, 1108.) A trial court's decision "on its own motion to revisit its interim ruling . . . [is] an action within its inherent authority." (*Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1239.) "Even after a court has issued a written decision, the court retains the power to change its findings of fact or conclusions of law until judgment is entered." (*Bay World Trading, Ltd. v. Nebraska Beef, Inc.* (2002) 101 Cal.App.4th 135, 141.)

Thus, contrary to Hermann's assertion, the November, 2006, ruling was neither final nor binding.

### *Denial of Hermann's Claim for a $51,565.48 Credit*

Hermann also maintains the trial court erred in denying her a $51,565.48 credit against the assets of the constructive trust. Hermann claimed, on Schedule A to her "Amended Summary of Account," that she made nine cash payments to the Jane Alter trust, totaling $51,565.48. She asserts "Schedule A consists of monies undisputedly paid back to Wendy's mother's Trust."

"Our review of the judgment is conducted in view of the trial court's issuance of a detailed statement of decision that addressed each of the above described substantive areas. When reviewing a judgment based on such a statement of decision, 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.' " (*Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385, 1407, quoting *In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 358.)

In order to address this issue, we look to the law regarding the accounting obligations of trustees. An individual who wrongfully becomes the trustee of certain property must still provide an accounting, despite the trust subsequently being declared void. (See *England v. Winslow* (1925) 196 Cal. 260, 268–270.) "[I]t must be regarded as settled law that one who assumes voluntarily to act in the capacity of a trustee and receives and holds the funds of another by virtue of such assumed relation, cannot be heard to allege the irregularity or invalidity of his appointment as such trustee in an action brought by the *cestui que trust* for an accounting for the proceeds of his trust." (*Id*.

13

at p. 269.)  " 'Trustees are . . . under an obligation to render to beneficiaries a full account of all their dealings with the trust property, and where there has been a negligent failure to keep true accounts all presumptions are against them upon a settlement.'  [Citations.]" (*Blackmon v. Hale* (1970) 1 Cal.3d 548, 560.)  "Trustees are also under the duty to prove every item of their account by 'satisfactory evidence'; the burden of proof is on them and not on the beneficiary; and any doubt arising from their failure to keep proper records, or from the nature of the proof they produce, must be resolved against them." (*Estate of McCabe* (1950) 98 Cal.App.2d 503, 505.)

At the hearing on September 13, 2006, after the accounting was filed, the court indicated it recommended appointing a referee to review the accounting and make recommendations, given the size and complexity of the report.  The parties did not agree to share the costs of appointing a referee, so no referee was appointed.  David's counsel ultimately hired Charlene Haught Johnson, an experienced probate attorney and a California Probate Referee, to prepare an analysis of the assets, accounts and transactions of the constructive trust.  Johnson was "asked to make [her] own recommendations to the Court in this matter without interference from . . . Ms. David's attorneys . . . ."  Johnson indicated the post-death portion of the accounting did not balance, and Hermann's claimed credit for $51,565.48 in payments made to the constructive trust was "unsupported by any evidence."

Ohman, Hermann's accountant, submitted a declaration in response to Johnson's report, in which he opined the accounting balanced.  In regard to the claimed $51,565.48 credit, Ohman attached copies of six checks which he stated had been "inadvertently omitted."  Four checks were from Hermann, made payable to the Jane Alter Trust and totaling $45,636.71.  No explanation was provided as to why Hermann wrote these checks.  Ohman also attached copies of two checks from Hermann made payable to Prudential Securities, totaling $1,000, again with no explanation as to why Hermann should be credited.  As to the claimed sums of $353.77 and $75, Ohman declared these were "two Visa entries concern[ing] purchases of goods by Ms. Hermann for the Trust

14

(e.g., such as office supplies)." He conceded he was not "able to track down" documentation for the final $4,500 claimed payment.

In its Amended Statement of Decision, the court explained its denial of the entire amount of claimed Schedule A credits. "[T]here is no reason to apply the other credits that Hermann has requested. In particular, Hermann seeks additional 'Schedule A' credits for $51,565.48 she allegedly deposited into trust accounts. Ms. Johnson did not recommend approval of this credit because the post-death account to which Schedule A relates did not balance . . . . As a result, Ms. Johnson's focus was on disbursements and distributions, 'to determine which of these expenses were for valid trust purposes.' . . . The court adopts Ms. Johnson's reasoning and furthermore notes that Hermann did not timely provide support for these alleged Schedule A contributions and her late filing included copies of checks supporting only 'approximately $36,637 of' the $51,565.48 she claims to have deposited."[3]

Thus, the record demonstrates Hermann failed to meet her burden of proving by "satisfactory evidence" that she paid all the claimed Schedule A sums to the Jane Alter trust, and that these checks and payments were for trust purposes. At the time of the claimed payments, Jane Alter was deceased and Hermann controlled the entire trust estate as the sole beneficiary. (*David v. Hermann*, *supra*, 129 Cal.App.4th at p. 679.) The copies of cancelled checks she submitted totaled only $45,636.71. There is no explanation of why four of these checks were deposited to the trust account, and no explanation of the two payments to Prudential Securities.[4] And, the only explanation

---

[3] The $36,637 figure was referenced in Hermann's response to the Johnson report and recommendations, in which she claimed "the bank statements of the Trust . . . reflect approximately $36,637 of these deposits." The bank statements and other documents were submitted to the trial court in binders. We previously granted Hermann's application to transmit these exhibits from the superior court to this court under California Rule of Court, rule 8.224.

[4] Prudential Security statements provided in the black binder submitted entitled "Copies of Hermann's Documents in Support of Petition to Approve and Settle Accounting" show two $500 deposits were made to Wendy Alter Hermann's account, not a trust account.

provided for the "two Visa entries" totaling $428.77, is Ohman's declaration that they "concern purchases of goods by Ms. Hermann for the Trust (e.g., such as office supplies)." His declaration, executed in 2006, does not indicate how he had personal knowledge of the purpose for those Visa charges claimed to be made in 2000 and 2001, and there is no documentation, in the form of Visa statements or receipts, supporting these claimed payments. Given that the bulk of these claimed payments were checks Hermann wrote from her personal account and deposited to the Jane Alter trust account at a time when Hermann controlled the account and was the sole beneficiary of that trust, we cannot say the court erred in holding Hermann had not met her burden of proving she was entitled to reimbursement for claimed payments to the Jane Alter Trust account.

Moreover, the court was confronted with the opposing opinions of Johnson and Ohman regarding whether the post-death accounting balanced, and whether Hermann's claims should be approved. In its Amended Statement of Decision, the court explained "both sides continue to refer to the report of Charlene Haught Johnson, a California Probate Referee with experience in San Mateo and San Francisco Counties. . . . Although that report was originally requested by David, it has been variously cited by Hermann as support for her contentions. . . . Thus, it may be closer to a 'neutral' review than many of the other arguments before this court. In some instances, the court has accepted the report as substantiation for matters claimed by either side." The court did not err in finding one declaration more credible than the other, and adopting the Johnson recommendation in that regard.[5]

### Interest on Assets of Constructive Trust

Hermann maintains for a variety of reasons that *no* interest should have been imposed after October 2006 on the surcharge against her. She asserts the amount of the

---

[5] Supplemental declarations of both Johnson and Ohman were filed, restating their respective opinions regarding whether the accounting balanced. David filed a motion to disregard the arguments in Hermann's reply brief at pages 28–36 discussing Ohman's November 16, 2006 supplemental declaration opining the accounting balanced. Given our holding, we deny the motion as moot.

16

surcharge was not " 'certain or capable of being made certain.' "[6] She also contends it was error to award interest after October 2006 because "the accounting already includes . . . interest up to October 6, 2006." She additionally claims it was inequitable to award interest because she acted reasonably but was " 'prevented . . . by the act of the creditor from paying [t]he debt.' " And, she asserts the court abused its discretionary equitable authority to deny interest during periods when Hermann was " 'attempting to redress [the trial] Court's prejudicial and erroneous rulings' " and during which David was "resistan[t] to [Hermann] delivering their mother's property."

"The law is clear that if a constructive trust is to be imposed on money and other property, the beneficiary thereof is entitled to recover not alone the money and property so acquired but also *interest on such money at the legal rate from the time of its receipt* and the rents, income and profits on such property together with interest thereon at the legal rate from the time of receipt. Any other principle of law would reward the wrong doer by permitting him to obtain the benefit and use of the property and money which he had wrongfully obtained without accounting for the rents therefrom or interest thereon." (*Bank of America Nat'l Trust & Sav. Assn. v. Ryan* (1962) 207 Cal.App.2d 698, 709–710 (*Ryan*) italics added.) Indeed, the rightful owner of the constructive trust assets may recover more than the legal rate of interest on those assets in certain circumstances. "The purpose of the constructive trust remedy is to prevent unjust enrichment and to prevent a person from taking advantage of his own wrong. . . . By the time plaintiff obtains a final judgment, the original fund may have grown far greater than the legal rate of interest would recognize. To allow the defendant to pocket the difference would reward the defendant for his wrongdoing." (*Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119, 135.)

---

[6] She does not object to interest imposed on the constructive trust estate prior to October 2006.

17

Hermann nevertheless claims it was error to award interest on the surcharge because that amount was not "certain."[7] She relies on Civil Code section 3287, which provides in part: "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any debtor . . . ." (Civ. Code, § 3287, subd. (a).)

The court did not impose prejudgment interest under the authority of Civil Code section 3287, nor was it required to. The court indicated it was relying on Probate Code sections 9601 and 9602, regarding a personal representative's breach of duty, both in assessing the per diem interest and in finding "no factual basis for excusing the accumulation of interest during the entire period since Judge Smith's November, 2006 decision . . . ." The court did, however, excuse interest for a period of one year following the November 2006 ruling under its "discretionary equitable authority provided in Probate Code § 9602(b)" because "there have been periods when neither party could proceed through no fault of her own."

Section 9601 provides in part "If a personal representative breaches a fiduciary duty, the personal representative is chargeable with any of the following that is appropriate under the circumstances: [¶] (1) Any loss or depreciation in value of the decedent's estate resulting from the breach of duty, with interest." (Prob. Code, § 9601, subd. (a)(1).) Section 9602 provides in part that if the personal representative is liable for interest under section 9601, he or she is liable for "the greater of" the amount of interest at the legal rate on judgments or the amount of interest actually received. (Prob. Code, § 9602, subd. (a).)

---

[7] Hermann nowhere explains why the amount of the assets of the constructive trust were not capable of being made certain. Indeed, she asserted in her reply brief that "Wendy's position is that . . . the November 2006 Decision was capable of calculation and was calculated correctly. . . ."

18

David maintains an award of interest under Probate Code section 9601 does not require an amount certain or capable of being made certain. She relies on *Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866 (*Uzyel*), which addressed a virtually identical statute, Probate Code section 16440. That statute, regarding trustees rather than personal representatives, provides "If a trustee commits a breach of trust, the trustee is chargeable with any of the following that is appropriate under the circumstances: [¶] (1) Any loss or depreciation in value of the trust estate resulting from the breach of the trust with interest." (Prob. Code, § 16440, subd. (a)(1).) *Uzyel* held section 16440 "authorize[s] prejudgment interest on such an award *without the need to show that the amount was certain or capable of being made certain by calculation*, as would be required under Civil Code section 3287, subdivision (a)." (*Uzyel, supra,* 188 Cal.App.4th at p. 921, italics added.) The reasoning of *Uzyel* regarding interest awarded under Probate Code section 16440 applies equally to interest awarded under section 9601.[8]

Hermann also claims it was error to impose interest on the amount of the constructive trust assets wrongfully held by her after October 6, 2006[9] because $473,215.50 of "interest [was] built into the extensive accounting," and imposing per diem interest after that date was an unfair "penalty." Hermann's citations to the record do not support the claimed sum of $473,215.50, and neither her accounting, filed on August 14, 2006, nor the errata filed on August 21, 2006, include interest on the sums she held in constructive trust.[10] Moreover, awarding the statutorily authorized per diem

---

[8] David maintains "The Trial Court should have cited Probate Code section 16641(b), which is applicable to trusts. However, the language therein is identical to the language of Probate Code section 9602(b), so the error is harmless." We affirm the ruling if correct for any reason. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19.)

[9] On that date, the court issued an order allowing Hermann to file a response to the Johnson report by October 23, 2006. In its Judgment, the court awarded interest on the surcharge of $1,370,375.75 "at the rate of $245.79 per day after October 4, 2006."

[10] The Johnson report recommended interest on the disallowed expenses claimed in Hermann's accounting from the date of the claimed expense payments. Hermann did not object to the interest imposed on the disallowed claims prior to October 2006, only to

19

interest on the amount Hermann owed does not unfairly penalize her, but fairly compensates the trust beneficiaries for their loss of use of the trust assets.

Lastly, Hermann asserts "[w]ithout any rationale or reasoning, the Marin court then pulled out of its hat a 'one-year period of relief from interest.' " Hermann acknowledges the trial court's discretion in this regard, but complains the court erred in not relieving her of *all* interest after October 2006 because she "has acted reasonably."

Both Probate Code section 9602 and section 16441 give the court discretion to excuse the personal representative or trustee from liability for interest in whole or in part if he or she has "acted reasonably and in good faith." (§§ 9602, subd. (b), 16441, subd. (b).) The trial court did exercise its discretion, excusing the interest for a one-year period. Given the background of this case, we cannot say the court abused its discretion in not excusing all interest after October 2006.[11]

### Ownership of 300 Brannan Street

In her accounting, Hermann listed the 25 percent interest in the Partnership as an asset of the Jane Alter Trust. But, as Hermann acknowledges, the record also reflects a deed transferring Jane Alter's 25 percent interest in the Brannan Street *real estate* to "Wendy Alter, trustee of the Jane Alter Living Trust" on July 10, 1997.[12] Thus, it is

---

the interest imposed from after October 6, 2006 because it "improperly punish[ed] Hermann for attempting to redress [the trial court's] prejudicial and erroneous rulings." Had Hermann's attempts in this regard been successful, the interest award would have been reversed. Her unsuccessful attempts allowed her to have the benefit of retaining the surcharge, thus justifying imposition of interest.

[11] Hermann also claims the court was barred from entering a personal judgment against her because this was "a petition to approve and settle an accounting of the former trustee of a decedent's estate." To the contrary, it was an action against Hermann for fraud and misrepresentation, the outcome of which was imposition of a constructive trust on assets wrongfully held by Hermann. "A trustee is personally liable for torts committed in the course of administration of the trust only if the trustee is personally at fault." (Prob. Code, § 18002.) Hermann was.

[12] Hermann's assertion that David is barred from "attacking the 1997 San Francisco Probate Order distributing the real property to Jane [Alter] in the Estate of Zal Alter" proceeding is disingenuous. (Italics omitted.) As the record demonstrates, Debra Dolch, in her capacity as successor trustee of the Alter Family Trust deeded Jane Alter's

apparent *both* Jane Alter's 25 percent interest in the Partnership *and* Jane Alter's 25 percent interest in the Brannan Street real property are assets of the constructive trust.[13] Accordingly, Hermann maintains the trial court erred in finding Jane Alter's 25 percent ownership interest in the Brannan Street real property was actually owned by the Partnership. We agree.

Hermann asserts the statutory presumptions set forth in Corporations Code section 16204 and Evidence Code section 662 mandate that Jane Alter, not the Partnership, held title to 25 percent of Brannan Street. Evidence Code section 662 provides "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." Corporations Code section 16204 provides in pertinent part: "Property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes." (Corp. Code, § 16204, subd. (d).)

Legal title to the Brannan Street property was *not* held in the name of the Partnership. Rather, the trial court based its ruling that the Partnership "is the property owner" of the 25 percent interest in Brannan Street in part on the supposed "ambiguity" of the Partnership Agreement between Zal Alter and Renee Delman regarding ownership of the real property.

In 1966, when the partnership agreement between Zal Alter and his sister Renee Delman was executed, each owned an undivided 50 percent interest in the business, 300

---

25 percent interest in the Brannan Street property to Hermann as the then-trustee of Jane Alter's trust.

[13] Given that both the 25 percent interest in the Partnership and in the Brannan Street real property are assets of the constructive trust, one might wonder why the parties care whether the 25 percent interest in the real estate is an asset of the Partnership or not. We note, however, that if the 25 percent interest in the Brannan Street real property is not owned by the Partnership, then the owner(s) of that 25 percent interest theoretically could seek to partition the realty. (Code Civ. Proc., § 872.210, subd. (a)(1).)

21

Brannan Street. The partnership agreement provided in part: "Whereas, the parties hereto have inherited certain real and personal property from the estate of their late father, Marcus Alter, and *are each the undivided owners of one-half of said property* [¶] . . . [¶] . . . the parties by this Agreement do associate themselves as equal partners for the purpose of carrying on, conducting and operating those certain parcels of real property described in Exhibit A" which included 300 Brannan Street. The partnership agreement also provided "*Nothing herein contained shall affect the respective partner's ownership of undivided one-half interests in the real property now owned by each of them in such undivided interests*, or any real property which may hereafter be acquired by them in such undivided interests." (Italics added.) The partnership agreement further gave each partner a right to purchase the other's interest in the realty if that partner "receive[d] a bona fide offer . . . for the purchase of any real property owned by the partnership." The agreement further provided "Any profits and losses of said partnership shall be borne in proportion to the partnership interests."

Thus, there was no "ambiguity" in the partnership agreement. On the contrary, it clearly acknowledged that, while Zal Alter and Renee Delman were operating the business as partners, they *retained* their separate undivided one-half interests in the real property.[14]

In 1989, Zal and Jane Alter created the Alter Family Trust. (*David v. Hermann, supra*, 129 Cal.App.4th at p. 676.) In 1993, the trust was split into the Zal Alter Trust and the Jane Alter Trust, with an "undivided one-fourth (1/4) interest in the 300 Brannan Street Partnership" listed as an asset. (*Id*. at p. 678.) In 1997, after Zal's death, Debra Dolch, as trustee of Zal's trust, *deeded* a 25 percent interest in the 300 Brannan Street *real property* (one-half of Zal's 50 percent interest in the real estate) to Hermann, as the

---

[14] As Hermann correctly notes, "it is not unusual that property be used for partnership purposes and not belong to the partnership." (*Ellis v. Mihelis* (1963) 60 Cal.2d 206, 218.) In *Ellis*, the court concluded a ranch owned by two brothers and operated as a partnership did not become a partnership asset because "[t]here was no showing that the ranch was acquired for the partnership or with partnership funds or that the partnership existed at the time the ranch was acquired." (*Id*. at pp. 218–219.)

22

trustee of Jane's trust. After Jane's death, Hermann *deeded* the 25 percent interest in the 300 Brannan *real property* from herself, as trustee, to herself, as her separate property. In June 2006, the parties stipulated and the court ordered Hermann to *deed* the 25 percent interest in the *real property* to Debra Dolch, the receiver.

Despite the plain language of the Partnership agreement recognizing the individual ownership of the real property and the uncontradicted record title of the 25 percent ownership in the property at issue here, the trial court relied on the following to conclude the property was, in fact, owned by the business: Hermann's own representations on various schedules of her accounting which indicated the real estate was an asset of the business; Ohman's statement in his declaration that he relied on the estate tax return for Jane's estate in preparing Schedule E to Hermann's accounting; the Jane Alter estate tax return signed by Hermann in 1999 also indicating the property was an asset of the business; and Hermann's " 'Supplemental Declaration' filed 9/12/06, saying that Dolch was 'retained by the 300 Company partners who owned the 300 Brannan Street property."

However, Hermann's representations in these documents, whether intentional or simply mistaken, cannot act to change the record title to the 300 Brannan Street property. None of these documents provide the "clear and convincing proof" necessary to rebut the presumption that "[t]he owner of the legal title to property is . . . the owner of the full beneficial title." (Evid. Code, § 662.) Moreover, David stipulated that Hermann *deed* the 25 percent interest in the 300 Brannan *real property* to Debra Dolch, as receiver of the constructive trust property. David did not contend at that time that the property was a Partnership asset. Indeed, if the real property was a partnership asset, we do not see how Hermann could unilaterally have transferred title; rather, the transfer would have had to have been authorized by the partnership.[15]

---

[15] We ordered supplemental briefing from both parties on whether other parties with a record ownership interest in the Brannan Street real property or with an ownership interest in the partnership were indispensable parties. Because we conclude the record title remains controlling, we need not and do not reach that issue.

23

Accordingly, we reverse that part of the April 12, 2011, judgment decreeing the Partnership owns a 25 percent interest in the Brannan Street real property.[16]

**DISPOSITION**

The portion of the judgment decreeing the Partnership owns a 25 percent interest in the 300 Brannan Street real property is reversed, and the judgment is ordered modified to state the constructive trust estate includes both a 25 percent interest in the Partnership and a 25 percent interest in 300 Brannan Street. In all other respects, the judgment is affirmed. Each side shall bear their own costs on appeal.

_____

Banke, J.

We concur:

_____

Margulies, Acting P. J.

_____

Becton, J.[*]

---

[16] Hermann contends the trial court erred in denying her request for judicial notice of various documents relating to this issue, including a title company's report, deed of trust, a probate referee's report, recorded bank documents and "record title for 300 Brannan," in support of her "Brief Responding to David's New Issues Raised Without Notice at the May 7, 2007 Hearing." The court did not abuse its discretion in denying this request because these documents did not fall into any of the mandatory judicial notice categories, nor were the documents properly authenticated. (Evid. Code, §§ 451, 403, subd. (a)(3).) Moreover, even when a court takes judicial notice of a document, it does not take notice of the truth of matters stated therein. (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 987–988.) In any event, the issue is moot.

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.